IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT
Case No. 11-4206

| | |
|---|---|
| SHANNON CAVANAUGH and BRAD CAVANAUGH, | : |
| | : |
| Plaintiffs/Appellant, | : **APPELLANT'S REPLY BRIEF** |
| | : |
| vs. | : Case No. 11-4206 |
| | : |
| WOODS CROSS CITY, a Utah municipal corporation; DANIEL DAVIS, an individual, | : |
| | : |
| Defendants/Appellees. | : |

Appeal from the United States District Court for the District of Utah

The Honorable Tena Campbell

District Judge

APPELLANT'S REPLY BRIEF
(ORAL ARGUMENT REQUESTED)

Bret M. Hanna (USB #6885)
Kathleen E. McDonald (USB #10187)
JONES WALDO HOLBROOK &
    McDONOUGH PC
170 South Main St., Suite, 1500
Salt Lake City, UT  84101
Telephone: (801) 521-3200
Facsimile: (801) 328-0537

1054071.1

# TABLE OF CONTENTS

<u>Page No.</u>

TABLE OF CONTENTS ......................................................................... i

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ...................................................................................1

STANDARD OF REVIEW ......................................................................2

ARGUMENT ...........................................................................................5

I.   THE DISTRICT COURT ERRONEOUSLY PERMITTED OFFICER
     DAVIS TO DESCRIBE HIS FEARS AND ABUSED ITS
     DISCRETION IN FAILING TO PROPERLY INSTRUCT THE JURY
     TO DISREGARD THE TESTIMONY..............................................5

     A. The district court improperly allowed Davis to testify regarding his
        personal fears and beliefs. ..........................................................5

     B. The district court abused its discretion in failing to properly instruct
        the jury regarding the limitations of the relevant time period...................10

II.  THE DISTRICT COURT ERRED IN SENDING ISSUES OF LAW
     TO THE JURY.............................................................................12

III. THE DISTRICT COURT ERRED IN FAILING TO GIVE A JURY
     INSTRUCTION DEFINING ACTIVELY RESISTING ARREST AND
     IN DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL. ..................16

     A. The active resistance instruction is a correct statement of the law. ...........16

     B. The district court abused its discretion in failing to give this
        instruction, and the instructions as a whole did not properly instruct
        the jury on the issues and applicable standards. .......................................18

IV.  NONE OF PLAINTIFF'S CONDUCT INDICATED THAT SHE WAS
     AN IMMEDIATE THREAT AS A MATTER OF LAW, AND THE
     COURT ERRED IN DENYING PLAINTIFF'S MOTIONS.........................19

V.  BECAUSE DEFENDANTS DID NOT PUT FORTH ANY
    EVIDENCE DISPROVING THAT MRS. CAVANAUGH HAD
    SOME EMOTIONAL INJURY, THE DISTRICT COURT ERRED IN
    PERMITTING DEFENDANTS TO PUT FORTH AN
    APPORTIONMENT DEFENSE. ................................................................20

VI. THE DISTRICT COURT ERRED IN RELYING ON MAGIC
    WORDS IN REFUSING TO PERMIT PLAINTIFF TO ADDUCE
    EVIDENCE OF FUTURE LOST INCOME, FUTURE MEDICAL
    EXPENSES, AND FUTURE PAIN AND SUFFERING..............................21

VII. THE DISTRICT COURT ERRED IN EXCLUDING EVIDENCE OF
    PAST MEDICAL EXPENSES WHERE IT WAS CLEAR THAT THE
    CARE WAS NECESSARY. ........................................................................24

    A. The medical bills establish a prima facie case of reasonableness. .............24

CONCLUSION ......................................................................................................27

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
    LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE
    REQUIREMENTS ..........................................................................................30

CERTIFICATION OF DIGITAL SUBMISSION .................................................31

CERTIFICATE OF SERVICE..............................................................................32

1054071.1

# TABLE OF AUTHORITIES

Page No.

**FEDERAL CASES**

*Abdullahi v. City of Madison*, 423 F.3d 763 (7th Cir. 2005)................................. 17

*Brigham City, Utah v. Stuart*, 547 U.S. 398, 126 S.Ct. 1943 (2006) ................6, 10

*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010)............................................ 17

*Chappell v. City of Cleveland*, 585 F.3d 901 (6th Cir. 2009)............................7, 11

*Contri v. Yellow Freight System, Inc.*, 1996 WL 87237 (S.D.N.Y) ...................... 25

*Cortez v. McCauley*, 478 F.3d 1108 n. 8 (10th Cir. 2007) ..................................... 6

*Craig v. Murphee*, 35 Fed. Appx.765 (10th Cir. 2002)........................................ 18

*Davis v. Safeway Stores, Inc.*, 532 F.2d 489 (5th Cir. 1976) ................................ 25

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001) .......................................... 19

*Dickerson v. McClellan*, 101 F.3d 1151 (6th Cir. 1996)....................................... 11

*FDIC v. Schuchmann*, 235 F.3d 1217 (10th Cir. 2000) ........................................ 18

*Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008)............................................ 6

*Forrester v. City of San Diego*, 25 F.3d 804 (9th Cir. 1994) ............................... 17

*Gonzales v. Duran*, 590 F.3d 855 (10th Cir. 2009)......................... 4, 13, 14, 15, 16

*Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865 (1989) ..................................... 6

*Henry v. Purnell*, 652 F.3d 524 (4th Cir. 2011)...........................................8, 9, 10

*Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001)................................ 17

*Keylon v. City of Albuquerque*, 535 F.3d 1210 (10th Cir. 2008)....................13, 14

*Landis v. Baker*, 297 Fed. Appx. 453(6th Cir. 2008).......................................... 11

*Lee v. Anderson*, 616 F.3d 803 (8th Cir. 2010)..................................................... 6

*Lundstrom v. Romero*, 616 F.3d 1108 (10th Cir. 2010) ...................................13, 15

*Maestas v. Lujan*, 351 F.3d 1001 (10th Cir. 2003) .........................................15, 16

*Martinez v. Caterpillar, Inc.*, 572 F.3d 1129 (10th Cir. 2009)...........................4, 18

*McCormick v. City of Fort Lauderdale*, 333 F.3d 1234 (11th Cir. 2003)............. 17

*Mid-Continent Cas. Co. v. Blutone Enterprises, LLC*, 422 Fed. Appx. 671 (10th
    Cir. 2011)....................................................................................................4, 18

*Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184 (10th Cir. 2009) . 3,
    24, 25, 27

*Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991) ................................................. 7

*Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769 (2007)........................................... 6

*Shekleton v. Eichenberger*, 677 F.3d 361 (8th Cir. 2012).....................................7, 8

*Smith v. Ardew Wood Products, Ltd.*, 2009 WL 577270 (W.D. Wash.)............... 25

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005)......................................... 17

*Sturdivan v. Murr*, 511 F.3d 1255 (10th Cir. 2008)............................................ 20

*U.S. v. Creighton*, 639 F.3d 1281 (10th Cir. 2011).............................................. 10

iii

*U.S. v. Martinez*, 512 F.3d 1268 (10th Cir. 2008) ................................................... 2
*U.S. v. Montague*, 421 F.3d 1099 (10th Cir. 2005).................................................. 2
*Walker v. City of Orem*, 451 F.3d 1139 (10th Cir. 2006)................................10, 20
*Withrow v. Cornwell*, 845 F. Supp. 784 (D. Kan. 1994)....................................... 25

**STATE CASES**

*Gorostieta v. Parkinson*, 2000 UT 99, ¶ 35, 17 P.3d 1110 ................................... 26
*Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 37, – P.3d......................................... 26

**STATE STATUTES**

Colo. Rev. Stat. § 10-4-701.................................................................................. 25

**FEDERAL RULES**

Fed. R. Civ. P. 26................................................................................................. 4
Fed. R. Civ. P. 26(a) ........................................................................................... 24
Fed. R. Civ. P. 37................................................................................................. 4

## INTRODUCTION

Are police justified in using nearly fatal force to stop a woman because she was suicidal ten months earlier?  Are police justified in shooting a woman with a Taser on a concrete step because she had argued with her husband earlier in the evening and then left the house with a knife?  May police use nearly fatal force to stop a woman, who is not under arrest, from going into her house?   Defendants would have this Court answer yes to all of these questions.  The law is clear that police are not justified in using nearly fatal force when a person is not an immediate threat and is not actively resisting arrest.

The district court made several crucial errors.  It ignored decades of law that holds that an officer's motives, intent, beliefs and fears are irrelevant.  It asked the jury to resolve a question of law, when the court could have easily separated the legal issues from the factual issues.   And, the district court failed to use instructions that as a whole properly guided the jury.  The court did not instruct the jury to disregard Davis's fears, that there is a difference between active and passive resistance, and that the only relevant time frame is the moments around Davis's use of force.

Compounding these errors, the district court permitted Defendants to adduce prejudicial evidence which was only relevant to an apportionment defense, but the Defendants did not meet the legal requirements to state an apportionment defense.

1

The district court also critically penalized Plaintiff because her expert did not use a the word "permanent" in his report, even though Defendants well understood and were given repeated, timely notice that he indeed holds the view that Mrs. Cavanaugh's brain damage is permanent.  Finally, the district court relied on the law of another state, which has since been abrogated.   In total, the district court's errors are so numerous and fundamental that Plaintiff was not given a fair trial.

## STANDARD OF REVIEW

Not surprisingly, Plaintiff and Defendant do not wholly agree on the correct standard of review.  Several of Plaintiff's points challenge evidentiary rulings. Specifically, Plaintiff's first point challenges the district court's ruling to allow Officer Davis to testify regarding his subjective fears, Plaintiff's fifth point challenges the district court's admission of apportionment evidence, and the seventh point challenges the district court's exclusion of Plaintiff's past medical expenses.  The component parts of evidentiary rulings are held to different standards.  To the extent that an objection challenges the district court's factual findings, it is reversed if it is clearly erroneous, but the district court's legal conclusions are simply reviewed for errors.  *U.S. v. Montague*, 421 F.3d 1099, 1101-02 (10th Cir. 2005); *see also U.S. v. Martinez*, 512 F.3d 1268, 1275 (10th Cir. 2008).

2

Here, all of the challenges relate to the district court's legal conclusions and are thus reviewed for correctness. With respect to the first issue, the district court ruled that not permitting Officer Davis to testify regarding his subjective thoughts "would leave a hole in the evidence and would be prejudicial." *App. 93*. This is a legal conclusion because such evidence is irrelevant as a matter of law. The fifth point turns on the difference between pure causation and apportionment defenses and whether Defendants produced the evidence necessary to demonstrate that they were only presenting a pure causation defense. Those too are legal conclusions, reviewed for correctness. Plaintiff's seventh point challenges the district court's ruling that certain past medical expenses were not admissible because they were not shown to be necessary or reasonable. Plaintiff show that such standard is not legally required, a point which is reviewed for correctness.

Plaintiff's sixth point challenges the district court's ruling that excluded evidence of Plaintiff's future lost income, future lost earnings, and future pain and suffering because the district court ruled that a predicate expert opinion had not been adequately disclosed. With respect to expert testimony, this Court "review[s] de novo the question [of] whether the district court applied the proper legal standard in admitting an expert's testimony; [it] then review[s] for abuse of discretion [the district court's] actual application of the standard." *Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184, 1189 (10th Cir. 2009). In this

3

case, the district court ruled that a particular opinion had not been expressed in the expert's report, and therefore should have been excluded under Fed. R. Civ. P. 26 and 37. This legal conclusion is reviewed for correctness.

In addition, the first, second, and third sections challenge the district court's decision to exclude certain requested jury instructions. This Court reviews "the district court's refusal to give a particular instruction for an abuse of discretion, '[but] review[s] de novo whether, as a whole, the district court's jury instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards.'" *Mid-Continent Cas. Co. v. Blutone Enterprises, LLC*, 422 Fed. Appx. 671, 674 (10th Cir. 2011) (*quoting Martinez v. Caterpillar, Inc.*, 572 F.3d 1129, 1132 (10th Cir. 2009). This Court therefore should consider the district court's ruling on each instruction for abuse of discretion but also review de novo whether the instructions as a whole provide the jury with an ample understanding of the issues and standards.

Finally, the second section also challenges the district court for sending an issue of law to the jury. While Defendants characterize this as a challenge to the verbage of the special verdict form, it is more properly described as a challenge to the submission of an issue to the jury, which is reviewed de novo. See *Gonzales v. Duran*, 590 F.3d 855, 859 (10th Cir. 2009) (stating that the Court reviews de novo the submission of qualified immunity to the jury).

**ARGUMENT**

I.    **THE DISTRICT COURT ERRONEOUSLY PERMITTED OFFICER DAVIS TO DESCRIBE HIS FEARS AND ABUSED ITS DISCRETION IN FAILING TO PROPERLY INSTRUCT THE JURY TO DISREGARD THE TESTIMONY.**

      A.    **The district court improperly allowed Davis to testify regarding his personal fears and beliefs.**

The first issue in contention is whether the district court erred in allowing Officer Davis to testify (1) that he feared that if Mrs. Cavanaugh went into her house, she *may* have continued the argument with her husband, (2) that he believed she *may* have been angry with Mr. Cavanaugh, and (3) that he believed she *may* have had a knife.  The district court erred in allowing this testimony because Davis's fears and beliefs are subjective and irrelevant; as a matter of firmly established law, only the parties' objective actions are relevant.

Defendants take a creative approach in their counterargument.  They characterize testimony of Davis's fears as Davis's testimony of "the threat he perceived had [Mrs. Cavanaugh] gotten into her home."  *Defendants' Brief at 24*. In this way, Defendants attempt to utilize the word "perceive" in a way that means its polar opposite.  Davis's testimony was clear that Mrs. Cavanaugh's conduct was not objectively threatening.  She did not show any weapon, brandish any weapon, threaten anyone verbally, act aggressively, or even move toward Officer Davis.  *App. 561-63, 597-98*.  Davis did not *perceive* a threat by Mrs. Cavanaugh; he imagined one.

5

The law is clear that such imagings are irrelevant and never should have been considered by the jury. For decades, it has been a touchstone of Fourth Amendment analysis that the constitutionality of Officer Davis's conduct is measured by the "'objective reasonableness'" of the parties' actions. *Scott v. Harris*, 550 U.S. 372, 381, 127 S.Ct. 1769 (2007); *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865 (1989). "[S]ubjective concepts … have no proper place in that inquiry." *Graham*, 490 U.S. at 399. "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify the action.' The officer's subjective motivation is irrelevant." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404, 126 S.Ct. 1943, 1948 (2006) (emphasis in original, alteration and citation omitted); *see also Cortez v. McCauley*, 478 F.3d 1108, 1117 n. 8 (10th Cir. 2007); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008).

Defendants cite three cases for the proposition that officers are "routinely" permitted to testify of threats. *Defendants' Brief at 28*. But, those cases turn Defendants' argument on its head. In *Lee v. Anderson*, 616 F.3d 803, 806 (8th Cir. 2010), police chased Lee who was carrying a semi-automatic handgun. Lee pivoted toward the officer with the gun in his hand; the officer shot and missed. *Id*. Lee ran around a corner, then turned back again with the gun drawn; the officer shot and killed him. *Id.* In *Chappell v. City of Cleveland*, 585 F.3d 901, 904 (6th

Cir. 2009), two officers were attempting to arrest a teenager for armed robbery in his darkened house in the early morning. The officers saw that he was hiding with a knife, and ordered him to drop it. *Id.* Instead he moved quickly towards the officers with the knife blade pointing upward; they both immediately shot him. *Id.* at 905. In *Reese v. Anderson*, 926 F.2d 494, 495-96 (5th Cir. 1991), the facts which were supported by affidavits, indicated that officers chased a car from the scene of a robbery at speeds of forty to sixty miles an hour. When the car stopped, the officers ordered the occupants to raise their hands. *Id.* at 496. The front seat passenger lowered one hand, and the officers yelled at him to raise them. *Id.* He complied initially but then turned and again lowered a hand; an officer shot and killed him. *Id.* While the officers in these cases were permitted to testify regarding their fears, such testimony only reconfirmed what was obvious from the objective circumstances. The officers' fears in those cases were objectively reasonable because the actions themselves demonstrate the threat.

To the extent that there remains any confusion on this point, a summary of cases from other circuits distinguishes what constitutes irrelevant subjective beliefs as opposed to objective perceptions. As one example, in *Shekleton v. Eichenberger*, 677 F.3d 361, 363 (8th Cir. 2012), *Shekleton* left a bar and spoke to a woman smoking outside the bar. A police officer driving by believed that *Shekleton* was arguing with the woman. *Id.* at 364. The officer stopped to

investigate and asked *Shekleton* why they had been arguing. *Id.* *Shekleton*

explained that they were not arguing and suggested that two other officers on the

scene confirm this with the woman who was inside. *Id.* When the officer persisted

in asking why they had been arguing, *Shekleton* became agitated and demanded an

apology. *Id.* Shekleton stopped leaning against a wall, unfolded his arms and

turned toward the officer. *Id.* The officer interpreted this behavior as aggressive.

*Id.* Soon thereafter, the officer attempted to arrest Shekleton and in the process

shot him with a Taser, which caused him to fall and suffer a head injury. *Id.* In

reviewing the case, the Eighth Circuit specifically rejected the officers' arguments

regarding his beliefs about the argument and the posture change: "because an

officer's actions in an excessive force case are evaluated under an objective

standard, Deputy Eichenberger's belief as to what was happening is irrelevant.

Instead, what is relevant is whether a reasonable officer would have believed the

facts to be as Deputy Eichenberger believed them to be and whether a reasonable

officer would have determined the use of a Taser was necessary under those facts."

*Id.* at 365 n. 4. That is, the court put aside the notion that there was an argument,

and it considered Shekleton's actions without deferring to the belief that the

actions were aggressive.

Likewise, in *Henry v. Purnell*, 652 F.3d 524 (4th Cir. 2011), an officer

mistakenly shot a fleeing, non-violent misdemeanant with his firearm instead of his

8

Taser.  The *en banc* majority rejected the dissents' arguments, which parallel those

made by Defendants here:

> Purnell stated in his deposition that he was concerned that because
> Henry was in his neighborhood, he could have run somewhere and
> picked up a weapon.  However, that possibility did not make Henry an
> immediate threat.  Purnell also testified that he did not know whether
> Henry was armed since he had not searched him.  But Purnell had no
> reason to believe, or even suspect, that Henry was armed.  When the
> dissent stresses Purnell's personal hypotheses about what Henry might
> have done, it slips into the subjective and implies that all feeling
> suspects may be apprehended through the use of deadly force.

*Id.* at 532 n. 9.  Further, the court explained, "Purnell fails to understand that his

subjective beliefs or intentions have no place in our constitutional analysis, which

concerns the objective reasonableness of the officer's conduct in light of the

relevant facts and circumstances."  *Id.* at 534.

Reducing these points to their essence, the jury should have heard only what

Mrs. Cavanaugh did and did not do.   If Davis's fears were objectively reasonable,

they would have been apparent to the jury, just as the threats are obvious when a

man runs then pivots toward an officer with a gun in his hand, when a knife

wielding teenager lunges toward officers, and when, after a high speed chase, a

man in a car repeatedly lowers his hands out of sight.  In permitting Davis's

testimony, the district court undercut decades of case law from the Supreme Court

and this Circuit.

**B.    The district court abused its discretion in failing to properly instruct the jury regarding the limitations of the relevant time period.**

Defendants also argue that events that had occurred ten months earlier and events that occurred significantly earlier in the evening were relevant to Davis' use of force. However, the Supreme Court and this Circuit have rejected this position. "Defendant's seizure was reasonable under the Fourth Amendment, regardless of the individual officers' subjective motivations, as long as the circumstances *at the time of the seizure*, 'viewed objectively,' justify the seizure." *U.S. v. Creighton*, 639 F.3d 1281, 1288 (10th Cir. 2011) (*quoting Brigham City, Utah*, 547 U.S. at 404). The Fourth Circuit, *en banc*, has made this point even more clearly: "In considering whether an officer used reasonable force, a court must focus on the moment that the force is employed." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*).

Defendants, however, argue that such evidence is a part of the "totality of the circumstances." To the contrary, it is a totality of the circumstances in the immediate time frame of the officer's use of force that dictate its reasonableness, not the events over the previous year. In *Walker v. City of Orem*, 451 F.3d 1139, 1157-1160 (10th Cir. 2006), which is discussed at length in the opening brief, this Court properly distinguished the relevant time frame--the immediate moments before the officer shot the suspect—from the irrelevant earlier time period—

10

everything that happened earlier in the day and evening.  Similarly, in *Landis v. Baker*, the plaintiff's decedent had resisted arrest and tried to choke an officer.  297 Fed. Appx. 453, 456 (6th Cir. 2008) (unpub.).  However, before the officers used force, he "was no longer a threat to the officers nor was he actively resisting attempting to flee."  *Id.* at 461.  Because the decedent changed his own conduct before the officers acted, the Sixth Circuit emphasized that a time-segmented analysis was crucial.  "[T]he fact that a certain degree of force may have been justified earlier in the encounter to restrain the suspect does not mean that such force still was justified."  *Id.*  The Sixth Circuit has reaffirmed this point in *Chappell v. City of Cleveland*, 585 F.3d 901, 914-915 (6th Cir. 2009) and *Dickerson v. McClellan*, 101 F.3d 1151, 1161-62 (6th Cir. 1996).  Here too, regardless of what happened earlier in the evening, Mrs. Cavanaugh's conduct in the relevant time frame did not give Davis justification to shoot her with the Taser.

The court's instruction number 15 was insufficient to remedy the court's errors in allowing this evidence because it did not tell the jury not to consider Davis' subjective fears and beliefs and because it refers to the relevant time frame only obliquely.  In an effort to mitigate the court's errors, Plaintiff proposed the following instruction:

> Statements by Mr. Davis that he feared for his safety or the safety of others are not enough to show that Mrs. Cavanaugh was an immediate threat.  A mere hypothetical possibility that Mrs. Cavanaugh posed some risk is not sufficient to show that she posed an immediate threat.

11

> There must be some objective factors to justify a conclusion that Mrs. Cavanaugh posed an immediate threat.   Some of the factors that you may consider include whether Mrs. Cavanaugh acted aggressively and whether she threatened anyone.   You may also consider other objective factors, such as the location of the events, whether Mrs. Cavanaugh was in possession of a weapon, and Mrs. Cavanaugh's physical size compared to Mr. Davis or the other people involved.

*App. 103*.  This instruction is a correct statement of the law and was necessary given the prejudice created by the court's evidentiary errors.  The district court erred in allowing Davis's testimony of his subjective fears and abused its discretion in failing to properly instruct the jury.

## II.     THE DISTRICT COURT ERRED IN SENDING ISSUES OF LAW TO THE JURY.

In the principal brief, Plaintiff's second argument is that the district court erred by tasking the jury with deciding a mixed question of law and fact.  Plaintiff argued that the jury should have been asked discrete factual questions (was Shannon Cavanaugh actively resisting arrest, was Shannon Cavanaugh an immediate threat to Officer Davis or others, and was Shannon Cavanaugh attempting to evade arrest by flight), and based on those answers, the district court should have determined the legal issue (did Officer Davis violate Shannon Cavanaugh's constitutional rights).  To counter this argument, Defendants argue that the jury was not asked to determine whether qualified immunity applies.  Defendants' analysis is so superficial that their argument entirely misses the point.

The jury was asked, "Has Mrs. Cavanaugh proved by preponderance of the evidence that Officer Davis violated Mrs. Cavanaugh's right to be free from excessive force?" *App. 667.* That question contains both a factual component and a legal component. The district court erred by sending the legal component of the question to the jury over Plaintiff's objection.

Defendants ostensibly seek to point out that the cases on which Plaintiff principally relied address qualified immunity. It is true that those cases – *Keylon v. City of Albuquerque*, 535 F.3d 1210 (10th Cir. 2008), *Gonzales v. Duran*, 590 F.3d 855, 859 (10th Cir. 2009), and *Lundstrom v. Romero*, 616 F.3d 1108, 1120-25 (10th Cir. 2010) – most directly addressed whether the defendants have met the qualified immunity defense. But, those cases are entirely applicable here also. One of the two components addressed in the qualified immunity analysis was the very question that the district court sent to the jury, and that component is just as problematic as the other.

The first component of the qualified immunity analysis is whether a constitutional right was violated; that is the same question that the district court required the jury to decide. The second component is whether the right was clearly established at the time. All three cited cases make it abundantly clear that it is improper to send the second component of the qualified immunity analysis to the jury. But, the cases do not stop there. The discussion in Gonzales and the reasons

13

given in the other two cases make it clear that it is improper to send the constitutional right question to the jury also; it is a mixed question of law and fact.

The first case, *Keylon*, makes it clear that "'[t]he objective legal reasonableness of the [defendant]'s actions is a legal question.  But where the historical facts material to that issue are in dispute there is an issue for the jury.' 553 F.3d at 1218-19 (internal citations omitted, first emphasis in original).  The two subsequent cases further clarify that point.

*Gonzales* recognized three ways that the trial court <u>could</u> submit the qualified immunity defense to the jury.  The first method is that which is recommended:  "First, the court could submit special interrogatories to the jury to establish the facts.  Based on the jury's findings, the court could then determine whether the defendant's conduct was objectively reasonable in light of the clearly established law."  590 F.3d 855, 859 (10th Cir. 2009).

What the *Gonzales* court does not recommend is dispositive of the issue here.  The *Gonzales* court did not suggest that the court could ask the jury to determine whether the defendant's conduct was objectively reasonable.  Yet, that is exactly what the district court did here.

Moreover, the *Gonzales* case resolves the issue at hand through its explanation of the reason that the second approach is strongly disfavored.  Recall that in the second approach discussed in *Gonzales*, "the judge could define the

1054071.1

clearly established law for the jury.  Then, the court could instruct the jury to

determine what the defendant actually did and whether it was reasonable in light of

the clearly established law defined by the judge."  *Id.*  Under the prohibited third

approach, "the court could simply allow the jury to determine what the clearly

established law is, what the defendant actually did, and whether the defendant's

conduct was objectively reasonable in light of the clearly established law found by

the jury."  *Id.* at 859-60.

The *Gonzales* court explained that the second approach is strongly

disfavored because "[l]etting the jury determine whether the officer's actions were

reasonable in light of the clearly established law has the potential of asking the jury

to resolve a legal question."  *Id.* at 860.  As such, the *Gonzales* court expressed

unequivocally that juries should not be asked to determine legal questions where

instead the court can "submit special interrogatories to the jury to establish the

facts' and 'based on the jury's findings, the district court can then determine

whether the defendant's conduct was lawful in light of the clearly established

law.'"  *Lundstrom*, 616 F.3d at 1119 (quoting *Gonzales*, 590 F.3d at 859) (brackets

omitted).[1]

---

[1] Defendants cite *Maestas v. Lujan*, 351 F.3d 1001 (10th Cir. 2003) for the
proposition that "the objective reasonableness determination is properly referred to
the jury."  *Defendants' Brief at 30.*  However, *Maestas* actually holds, "Although
issues of qualified immunity normally are questions of law decided prior to trial, in
exceptional circumstances historical facts may be so intertwined with the law that a

This Court has made it clear that the question of whether the defendant's actions were constitutional is a mixed question of law and fact, and in such cases, the jury should not be asked to resolve the legal question. The district court erred in doing just that.

## III. THE DISTRICT COURT ERRED IN FAILING TO GIVE A JURY INSTRUCTION DEFINING ACTIVELY RESISTING ARREST AND IN DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL.

### A. The active resistance instruction is a correct statement of the law.

Plaintiff requested a jury instruction defining "actively resisting arrest" to distinguish active from passive resistance. The Constitution permits officers to use a greater degree of force when a suspect is actively resisting (i.e., fighting) rather than passively resisting (i.e., not responding). Defendants argue that the proposed instruction was not a correct statement of law even though it directly quotes a Utah statute. *Defendants' Brief* at 34. Despite the direct quotation, Defendants assert that it does not correctly state the law because it defines actively resisting arrest as "a criminal offense," rather than "in the context of a § 1983 action." *Id.* Defendants offer only their own opinions to support this proposition.

---

jury question is appropriate as to whether a reasonable person in the defendant's position would have known that his conduct violated that right." 351 F.3d at 1007. In this respect, *Maestas* is wholly consistent with *Gonzales. Maestas* cannot be read any more broadly because *Gonzales* impliedly overrules more broad interpretations. Despite Defendants' efforts to cloud the water, the Tenth Circuit precedent is clear that when it is possible to separate factual issues from legal issues, the court must do so. Here, the two strands of issues could be separated, and the district court erred in failing to do so.

16

To the contrary, if the requested instruction makes any error as a statement of the law, it only does so by using the most conservative definition of active resistance. The proposed instruction stated:

> A person "actively resisting arrest" if she (a) knows or reasonably should know that a police officer is seeking to arrest her and she (b) uses force or a weapon to interfere with the arrest; or (c) refuses to perform an act which is necessary to effect the arrest; or (d) refuses to refrain from performing an act that would impede the arrest.

It should be clear that Subpart (a) is a correct statement of the law. A person cannot resist arrest, actively or passively, if she is unaware that an arrest is in progress. Similarly, subpart (b) is clear; it should be undisputed that using force or a weapon to interfere with arrest is active resistance. Subparts (c) and (d) are less clear. The case law that distinguishes active and passive resistance in the § 1983 context indicates that active resistance includes aggressive actions whereas passive resistance includes ignoring commands and being uncooperative in a non-aggressive manner. *Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010); *Forrester v. City of San Diego*, 25 F.3d 804, 805 (9th Cir. 1994); *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005); *Abdullahi v. City of Madison*, 423 F.3d 763 (7th Cir. 2005); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1241-42 (11th Cir. 2003); and *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001). However, given that there is no Tenth Circuit law on this point, the proposed instruction makes the best attempt to define the term actively resisting

arrest in a manner that Defendants cannot challenge.  Defendants' argument that

this is an incorrect statement is wrong.  When there is no controlling common law,

the Utah Code is the best source on the topic.

### B. The district court abused its discretion in failing to give this instruction, and the instructions as a whole did not properly instruct the jury on the issues and applicable standards.

This Court reviews "the district court's refusal to give a particular

instruction for an abuse of discretion, '[but] review[s] de novo whether, as a whole,

the district court's jury instructions correctly stated the governing law and provided

the jury with an ample understanding of the issues and applicable standards.'"

*Mid-Continent Cas. Co. v. Blutone Enterprises, LLC*, 422 Fed. Appx. 671, 674

(10th Cir. 2011) (*quoting Martinez v. Caterpillar, Inc.*, 572 F.3d 1129, 1132 (10th

Cir. 2009).  "We begin with the general principal that a party is entitled to an

instruction based on its theory of the case whenever it produces sufficient evidence

to support it and submits an instruction that is a correct statement of the law.  'It is

not error,' however, 'to refuse to give a requested instruction if the same subject

matter is adequately covered in the general instructions.'"  *Craig v. Murphee*, 35

Fed. Appx.765 (10th Cir. 2002) (unpub.) (*quoting FDIC v. Schuchmann*, 235 F.3d

1217, 1222 (10th Cir. 2000)).  In this case, no instruction defined actively resisting

arrest, and no instruction distinguished active from passive resistance.  Coupled

with the failure to instruct the jury regarding the meaning of "immediate" in the

18

phrase "immediate threat," and the failure to instruct the jury to disregard Officer

Davis's subjective fears, the instructions as a whole did not adequately instruct the

jury, and the case should be reverse and remanded.

## IV.  NONE OF PLAINTIFF'S CONDUCT INDICATED THAT SHE WAS AN IMMEDIATE THREAT AS A MATTER OF LAW, AND THE COURT ERRED IN DENYING PLAINTIFF'S MOTIONS.

Defendants argue, based on the hypothetical world of what could have been,

that Plaintiff was a threat to herself and her husband.  In the hypothetical world

which Defendants urge this Court to inhabit, any tiff between spouses *may* become

deadly.  Indeed, in the hypothetical, any member of the public *may* have a gun at

any time; in such a world, even grade schoolers *may* be on the verge of obtaining

nuclear weapons to commit massive terroristic attacks.  But, this Court cannot

allow uncertainty, anxiety and fear to write the law.  The fear of what may have

been is not the measure of whether an officer used too much force.

The standard that this Court must apply is whether Officer Davis acted as a

reasonable officer considering the objective circumstances.  "[A] simple statement

by an officer that he fears for his safety or the safety of others is not enough [to

show an immediate threat]; there must be objective factors to justify such a

concern."  *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001).  The

objective circumstances show that Mrs. Cavanaugh did not verbally threaten

anyone, she did not display a weapon, she did not attempt to strike anyone, she did

1054071.1

not make a gesture that could be construed as a threat, she was not attempting to hurt herself, and she was moving away from, not toward, Davis.

As discussed in the primary brief, this Court has identified the factors on which to assess the degree of threat facing officers and described circumstances that do not show an immediate threat. *See Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008); *Walker v. City of Orem*, 451 F.3d 1139, 1157 (10th Cir. 2006). None of those factors support the conclusion that Mrs. Cavanaugh was an immediate threat. The district court erred in denying Plaintiff's motions on this point.

## V.    BECAUSE DEFENDANTS DID NOT PUT FORTH ANY EVIDENCE DISPROVING THAT MRS. CAVANAUGH HAD SOME EMOTIONAL INJURY, THE DISTRICT COURT ERRED IN PERMITTING DEFENDANTS TO PUT FORTH AN APPORTIONMENT DEFENSE.

Defendants argue that they were not attempting to put forth an apportionment defense but rather attempted to put forth the defense that being shot with the Taser and resulting brain injury caused Mrs. Cavanaugh absolutely no emotional damage and no head pain. Defendants impliedly concede that if the evidence showed that if the Taser injuries caused even some distress, then Defendants would be asking the jury to take the total amount of emotional distress and subtract the amount of distress that was caused by the other issues; that is, they would ask the jury to apportion the distress between the two sets of causes.

20

Likewise, Defendants impliedly concede that they did not meet the elements of the apportionment defense.

The district court erred as a matter of law in its conclusion that this defense was not an apportionment defense, and to the extent that the district court's decision rests on the facts, it is clearly erroneous. Numerous witnesses testified that Mrs. Cavanaugh was emotionally a different person than she was before her injuries. The only expert to testify on the topic, a world renowned neuropsychologist, testified that it was "silliness" to suggest that all of Mrs. Cavanaugh's problems were pre-existing. *App. 403*. Defendants however put forth no evidence that rebutted Plaintiff's evidence. As such, the only conclusion that could be drawn from the facts is that the Taser injury caused some distress. The only legal conclusion which can be drawn from that factual basis is that Defendants were presenting an apportionment defense, not a pure causation defense. Since Defendants indisputably did not meet the elements of the apportionment defense, the district court erred in permitting the prejudicial apportionment evidence.

## VI.  THE DISTRICT COURT ERRED IN RELYING ON MAGIC WORDS IN REFUSING TO PERMIT PLAINTIFF TO ADDUCE EVIDENCE OF FUTURE LOST INCOME, FUTURE MEDICAL EXPENSES, AND FUTURE PAIN AND SUFFERING.

The court excluded evidence of Plaintiff's future losses because the Plaintiff's expert did not use the word "permanent" in his report. But, he did use

21

the phrase "structural brain injury" which is synonymous with permanent. Moreover, Defendants' expert understood the meaning, and Defendants had repeated notice that Plaintiff's expert held that view years before trial and even before his deposition. As such, the district court erred as a matter of law in excluding Plaintiff's evidence of future losses.

Defendants argue first that Plaintiff's expert, Dr. Bigler, was not qualified to testify. Defendants' argument is supported by no case, statute, treatise, text or citation of any sort. Juxtapose this against the fact that Dr. Bigler has authored numerous textbooks, developed neuropsychiatric tests, won hundreds of thousands of dollars in grants for his research, won international awards, and led international associations of neuropsychologists. *App'ee Supp App 801-805*. Likewise, Dr. Bigler testified that those in his field routinely make diagnoses of the type he made, *App'ee Supp App 808-811*, and indeed, Defendants' own neuropsychologist felt himself qualified to offer an opinion on the same issue. *App. 395-96*. It is simply an understatement to say that Defendants' argument is incorrect.

Defendants' next contention is that they did not know that injuries to structures in the brain are by definition permanent. However, Dr. Bigler's report and deposition gave Defendants fair notice of his opinion. In his deposition, Dr. Bigler testified, "This is a very significant traumatic brain injury. … This brain has been changed." *App'ee Supp App 838, 1642*. Defendants' neuropsychologist

22

expert understood that Dr. Bigler had opined that Mrs. Cavanaugh's symptoms were permanent. *App. 395-396.* In addition, years before trial, Defendants were given a letter that Dr. Bigler had written in which he expressly stated that Mrs. Cavanaugh's injuries were "permanent." *App'ee Supp App 892-904.* Also, years before trial, Defendants were given the report of another expert which described a conversation with Dr. Bigler in which he told her that Mrs. Cavanaugh's injuries were "permanent."

Despite all of this, the district court ruled that Plaintiff had not given Defendants sufficient notice of Dr. Bigler's opinion that Mrs. Cavanaugh's injuries were "permanent" because the word was not used in his actual report. *App. 396-397.* Based on that conclusion, the district court barred Plaintiff from introducing evidence of Mrs. Cavanaugh's future medical expenses, future lost income and future pain and suffering. *App. 396-397.* The district court's ruling gave the word "permanent" a magical quality. Federal Rule 26(a)(2)(B) cannot as a matter of law be read so narrowly as to prohibit experts from explaining their opinions.

Defendants cite cases from other circuits which state that expert reports should be complete enough so that opposing counsel is not "'ambush[ed] at trial,'" "'must include the "how" and "why" the expert reached a particular result,'" and must supplement "if there are additions or changes." *Defendants' Brief at 45.* None of these are criticisms that can be applied in this circumstance. Defendants

were well aware for years of the claims in issue.  Defendants do not claim that

Dr. Bigler's report did not include the "how" and "why," but rather that it did not

include one particular term, and there were no additions or changes to the report.

The district court here clearly erred.  Dr. Bigler's 2009 report does not

contain the magic word "permanent," but it does describe significant symptoms

present two years after the injury and states that Plaintiff's brain injuries are

"structural."  Even if Dr. Bigler's testimony regarding the permanency of

Mrs. Cavanaugh's injuries was a technical violation of Fed. R. Civ. P. 26(a), the

district court erred in excluding evidence because the error was harmless given the

number of times Defendants were given notice of Dr. Bigler's opinion and the

years that spanned between that notice and the trial.

## VII.   THE DISTRICT COURT ERRED IN EXCLUDING EVIDENCE OF PAST MEDICAL EXPENSES WHERE IT WAS CLEAR THAT THE CARE WAS NECESSARY.

### A.     The medical bills establish a prima facie case of reasonableness.

In defending the district court's decision to exclude Plaintiff's past medical

expenses, Defendants seek to apply the law of other states.  What's more, some of

that law is no longer controlling even in the jurisdictions where it once applied.

For example, in this argument, Defendants continue to principally rely on the case

*Neiberger v. Fed Ex Ground Package System, Inc.*, 566 F.3d 1184 (10th Cir.

2009).  The rationale for that case, however, is entirely based on a Colorado

24

statute.  *Id.* at 1192  ("*Under the Colorado no-fault statute*, Mrs. Neiberger could

bring a tort suit by proving … that the accident had caused her to undergo

reasonably needed medical treatment whose reasonable value exceeded $2,500."

*Id.* (emphasis added)).  It hardly needs to be mentioned that Colorado law does not

apply here.  Moreover, that Colorado statute has since been repealed.  Colo. Rev.

Stat. § 10-4-701, *et seq.* (repealed July 1, 2003).  Defendants' principal case does

not even remain good law in the jurisdiction where it once applied.

Following this theme, Defendants cite several other cases that apply the law

of other states.  *Davis v. Safeway Stores, Inc.*, 532 F.2d 489, 491 (5th Cir. 1976)

(*per curiam*); *Smith v. Ardew Wood Products, Ltd.*, 2009 WL 577270 (W.D.

Wash.); *Contri v. Yellow Freight System, Inc.*, 1996 WL 87237 (S.D.N.Y); and

*Withrow v. Cornwell*, 845 F. Supp. 784 (D. Kan. 1994).  *Davis* is based primarily

on Texas law and secondarily on a 1966 treatise.  Id. at 491 ("*Since the law in

Texas* and elsewhere requires proof that the amount charged was reasonable, the

damages awarded for past medical expenses cannot stand." (emphasis added)).

Smith is based exclusively on Washington law.  2009 WL 577270 *2.  *Contri* is

based on New York law.  1996 WL 87237 * 2.  And, *Withrow* appears to follows

this same pattern, but it cites only its own jury instruction on the point.  845 F.

Supp. at 786.

While the law of other jurisdictions this may be an interesting point for a bar journal article, it is irrelevant to the case at hand. There is no Tenth Circuit or Utah law that holds that medical bills cannot establish a *prima facie* case of the reasonableness of the charges. To the extent that Utah cases have analyzed this point, they appear to impliedly hold the opposite. For example, in the recent case, *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 37, – P.3d –, the Utah Supreme Court reversed a jury verdict because defense counsel repeatedly referred to insurance proceeds. That is noteworthy because jurisdictions like Texas specifically require evidence such what was paid by insurance to show reasonableness. *Wilson*, however, makes it wholly clear that such evidence is not only not *required* in Utah, its use is sanctionable. Utah unequivocally does not follow the Texas approach. Moreover, in *Gorostieta v. Parkinson*, 2000 UT 99, ¶ 35, 17 P.3d 1110, the Utah Supreme Court held that the proof of the reasonableness of the bills could not be met through the plaintiff reading the bills into evidence. Instead, the court ruled "medical bills themselves [must] be used to prove their contents." *Id.* at ¶ 41. It appears therefore that Utah courts allow the use of medical bills to establish a *prima facie* case of the reasonableness of charges.

Similarly, any argument that the medical expenses were not necessary is a red herring. Plaintiff's treating neurosurgeon testified that the decision to drill into her skull to cauterize an actively bleeding artery in her brain was "the right

1054071.1

decision." *App. 275-76.*  He testified that, untreated, her condition was potentially fatal.  *Id.*  With this testimony, Plaintiff established a *prima facie* case for the necessity of the medical charges.

Defendants' arguments on this point resemble their arguments with respect to liability – both dwell in the fantastical world of hypotheticals.  If Defendants had some evidence that, for example, Mrs. Cavanaugh had employed the surgeons to perform a rhinoplasty or liposuction, at the same time that they were drilling into her skull, Defendants were entitled to adduce such evidence as a defense to the *prima facie* case.  But, without such evidence, Defendants cannot argue that the *prima facie* case was lacking.

The sum of this point is that the district court erred in relying on *Neiberger*, and Defendants have not cited to valid Tenth Circuit or Utah law to demonstrate that Mrs. Cavanaugh's actual medical bills cannot establish a *prima facie* case of the reasonableness of the costs.  The district court's ruling should be reversed.

## CONCLUSION

The district court committed several crucial errors.  It allowed evidence which is legally irrelevant and was highly prejudicial to Plaintiff.  The district court also disallowed significant evidence Plaintiff sought to introduce because it misinterpreted the legal standards.  On top of this, the district court refused to use jury instructions which may have mitigated its errors; in all, the district court did

not properly guide the jury but instead asked it to decide an issue which only should have been decided by the court itself.

Davis used nearly fatal force to prevent Mrs. Cavanaugh from going into her own house. He himself conceded that, considering the effect, he used too much force. He also conceded that he had no reason to shoot Mrs. Cavanaugh with the Taser when looking only at her actions on the front lawn. Yet, that information is the only information that the jury should have considered.

Compounding this, the district court asked the jury to determine an issue of law. The district court did not instruct the jury to disregard Davis's subjective thoughts, and the district court also did not provide the jury with the information it needed to understand the *Graham* factors. The jury was not instructed how actively resisting arrest differs from passive resistance and what the relevant time frame was.

Moreover, the district court permitted Defendants to insult the Cavanaughs' reputations by introducing evidence which only related to a defense that Defendants could not make as a matter of law. If those errors were not enough, the district court misread the Rules of Civil Procedure and the relevant case law. In those errors, the court gave magical status to the word "permanent" and ignored the fact that the Defendants understood Plaintiff's claim from the time the initial disclosures were made.

28

The district court made numerous significant errors.  Those errors prejudiced

Plaintiff; this case must be reversed and remanded with instructions to correct the

errors.

DATED this 15th day of October, 2012.

JONES WALDO HOLBROOK & McDONOUGH PC


By:  /s/ Kathleen E. McDonald
    Kathleen E. McDonald
    *Attorneys for Plaintiff-Appellant*

1054071.1

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND
TYPE-STYLE REQUIREMENTS**

1.　　This brief complies with the type-volume limitation of FED. R. APP.

P. 32(a)(7)(B) because the Reply Brief contains 6885 words exclusive of the Table

of Contents, Table of Authorities and the Certificates.

2.　　This brief complies with the typeface requirements of FED. R. APP. P.

32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface in font size 14 and

Times New Roman style.

DATED this 15th day of October, 2012.

JONES WALDO HOLBROOK & McDONOUGH PC


By: /s/ Kathleen E. McDonald
　　　Kathleen E. McDonald
　　　*Attorneys for Plaintiff-Appellant*

## CERTIFICATION OF DIGITAL SUBMISSION

I hereby certify as follows with respect to the digital submission of

APPELLANT'S BRIEF in the foregoing action.

1.    All required privacy redactions have been made and, with the

exception of those redactions, the digital submission is an exact copy of the written

document filed with the Clerk.

2.    The digital submission has been scanned for viruses with the most

recent version of Kaspersky Antivirus, and according to the program, is free of

viruses.


  /s/ Kathleen E. McDonald
170 S. Main St., Suite 1500
Salt Lake City, Utah 84101
Phone: 801-521-3200
kmcdonald@joneswaldo.com

1054071.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of October, 2012, I caused a true

and correct copy of the foregoing Appellant's Brief by electronic filing and U.S.

Mail, upon the following:

> Peter Stirba
> Blake Hamilton
> STRIBA & ASSOCIATES
> 215 South State #750
> Salt Lake City, UT  84111
> peter@stirba.com
> bhamilton@stirba.com

/s/ Jennifer Koontz